## WASHINGTON MILLS v. COX.

(Circuit Court of Appeals, Fourth Circuit. November 6, 1907.)

No. 718.

1. NEGLIGENCE—ACTION FOR NEGLIGENCE—PROXIMATE CAUSE OF INJURY.

In order to render negligence actionable, it must be the proximate cause of the alleged injury for which the damages are claimed, and although the defendant in an action may have been guilty of a breach of duty which in law amounted to negligence, yet if the plaintiff, by doing that which a reasonable and prudent person would ordinarily have done under the circumstances, could have prevented the injury, and he failed to do that, he cannot recover, because his negligence was the proximate cause of the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 90-92.]

2. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff, who was an adult employé in defendant's cotton mill, was set to run a machine called a "picker," with which he was unacquainted. The machine was 40 feet long, and had 5 covered cylinders which revolved and had knives at their surface. The machine became choked in one of the cylinders a few minutes after starting, and another employé threw off the belt, and told plaintiff to go for the superintendent of the room, who came and unchoked it by opening a door and inserting his hand. When it again became choked plaintiff threw off the belt, and, being unable to find the superintendent, undertook to unchoke the cylinder as he had seen it done by inserting his hand, without knowing the nature of the machinery or whether it had stopped running. In fact, the cylinder was still revolving and his hand was torn off. Held, that if defendant was negligent in failing to properly instruct plaintiff, such negligence was not the proximate cause of the injury, which was due to plaintiff's own negligence, and that the court erred in not directing a verdict for defendant, the material facts not being in dispute.

Waddill, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Virginia, at Abingdon.

P. H. C. Cabell and W. S. Poage (Cabell, Talley & Cabell, on the brief), for plaintiff in error.

T. L. Massie and J. C. Wysor (Wm. Rector, on the brief), for defendant in error.

Before GOFF, Circuit Judge, and WADDILL, and BOYD, District Judges.

BOYD, District Judge.  The defendant in error, who was the plaintiff below, and who will hereafter, for convenience, be called the plaintiff, brought a suit against the Washington Mills, the plaintiff in error, which was the defendant below, and which will hereafter be called the defendant, in the Circuit Court of Grayson county, Va. The plaintiff is a citizen and resident of Virginia, residing in the Western district of said state, and the defendant, a corporation chartered, organized, and existing under the laws of North Carolina, engaged in operating a cotton mill at Fries, in Grayson county, Va. The cause was removed for trial upon the petition of defendant to the Circuit Court of the United States for the Western District of Virginia. The plaintiff in his action sought to recover of the defendant damages for the loss of his (the plaintiff's) right hand, which he alleges was caused by the negligence of the defendant. The substance of the declaration is: That the plaintiff was entirely unacquainted with machinery and inexperienced in its operation; that although he made this known to the defendant the latter employed him to operate a complex, intricate, and dangerous machine called a "picker," the dangerous character of which was not obvious, and the dangers incident to its operation concealed and not easily discernible; that plaintiff accepted the employment upon the assurance of defendant that the operation of the machine was entirely safe; that a blind man or a child could run it; and that the place in which he was to work was also safe. As a further ground of negligence the plaintiff alleged that the defendant failed to give him instructions as to the character of the machine and the manner of operating it, or to warn him of the dangers incident to its operation, especially in view of the fact that the complex, intricate, and dangerous character of the machine was not obvious and was obscure from ordinary and usual vision; that when operating this machine, owing to its defective condition, it became choked with cotton, and the plaintiff, by reason of the failure of defendant to advise him and not knowing the danger, undertook to unchoke the machine, and, in his effort to do so, his right hand was torn off. The defendant interposed a plea of "not guilty" in the manner and form alleged by the plaintiff in his declaration, to which the plaintiff replied generally, and the issue was thus joined. The case was tried at Abingdon, in said district, at October term, 1906, and a verdict rendered by the jury in favor of the plaintiff for $4,000, whereupon the defendant, for errors assigned, sued out a writ of error from this court.

The uncontroverted facts, as shown by the testimony, are substantially as follows: The injury occurred on the 15th of March, 1905. On that day the plaintiff was at work as a laborer in the waste room of the Washington Mills, in company with a man by the name of Hall, the latter being superintendent of that room. D. C. Money, who was overseer of the picker room, and whose duty it was to repair and keep in order the machinery in that room, came into the waste room where plaintiff and Hall were at work, and said that he wanted one of them to go and run the picker. Hall said he could not go, but that plaintiff could go. Plaintiff told Money he did not know anything about operating the machine and that he was afraid he would get hurt; and Money said to plaintiff to go on and run it; that there was no danger in it, and that a blind man or a child could operate it. Money then took plaintiff up into the picker room, put the belts on the machine and started it. He showed the plaintiff a pile of motes, and told him to go to feeding the machine. The manner of feeding was to take the motes from the pile and place them upon a revolving apron, which carried them into the front of the machine. The plaintiff fed the machine 15 minutes, or something like that time, and the picker got choked. There was another operative named Liggan near by, and when the picker became choked he threw the belt onto the loose pulley and told the plaintiff to go and get Mr. Money to come and unchoke the machine. Liggan showed the plaintiff where Money was. Plaintiff went after Money, and the latter came and found that the machine was choked by an accumulation of cotton in the fifth cylinder. He opened the glass door, pulled the cotton out and unchoked it. He then pulled the belt back onto the tight pulley of the machine and it commenced to run. Then he said to the plaintiff: "I want you to put the motes in a little heavier, as I wish them to run through by twelve o'clock." Money then went away. The plaintiff commenced again to feed the machine, and in about 10 or 15 minutes it choked the second time. When this occurred the plaintiff took hold of the handle or lever and threw the belt on the loose pulley, and went to look for Money where he had found him before. Money was not there and the plaintiff came back. He could see what was the matter with the machine, and could see through the glass door which was there that it was choked like it was before. He says he thought the machine had stopped, commenced to pull the cotton out, got his hand in the cylinder, and it was torn off. The machine by which plaintiff was injured was what is known as a Kitson picker—a standard machine used in cotton mills for the purpose of cleaning motes. Cotton run through the lapper at a cotton mill leaves waste to which a small quantity of cotton still attaches. This waste is called "motes," and pickers are the machines used to separate the remaining cotton from the trash, and render it suitable to be manufactured. The undisputed evidence shows that the machine in use and by which the plaintiff was injured was in good order and usual running condition. It was something like 40 feet in length, and had 5 cylinders, the motes being fed into the machine on a rolling apron from the front end, passing through one cylinder after another, until finally discharged from the fifth cylinder at the rear end. The machine became choked

in both instances in the last cylinder, and this is where Money unchoked it, and where the plaintiff attempted to unchoke it and was injured. The picker was propelled by belts upon pulleys on an overhead shaft, and these belts worked upon pulleys attached to the cylinders of the picker, and were so arranged that when it was desired to stop the picker, by a movement of a handle or lever, a belt could be shifted from what is called the "tight" pulley to the "loose" pulley. It was further shown that the cylinders in these five compartments of the picker were heavy and were equipped with knives or blades, and that when in operation, and the belt was changed from the tight to the loose pulley, the cylinders would continue to revolve, for a short time, by their own momentum. The testimony of plaintiff and that of the defendant practically agree, except as to what occurred at the time that Money called upon the plaintiff to take charge of the machine. The plaintiff says Money told him to come and run, or operate, the picker, and when he said he did not know anything about it, Money told him that a blind man or a child could run it, and with this took him up and put him to work at the machine, pointing out the pile of motes, and showing him how to place them on the apron. Then Money left him. Money's version of what occurred at this stage is that the man whose duty it was to run the picker had not come in that day, and that he went to Hall and Cox and said: "I wish one of you to run the waste picker to-day." Cox said he did not know anything about running it, and Money said: "Come on, I'll show you how to run it; you haven't anything to do but to put the motes on the apron, and, if anything gets wrong with it, let me know, and I will fix it." We think it well, in order to a full understanding of the case and as bearing upon the principal question involved, to give the following extracts from the testimony of plaintiff, who was a witness in his own behalf. On cross-examination:

"Q. Now, Mr. Cox, didn't Mr. Money tell you if the machine became choked to come after him? A. No, sir, he did not. Q. He didn't say anything to you about that, did he? A. No, sir; he did not. Q. You wouldn't have gone after Mr. Money if Mr. Liggan hadn't told you to do so, would you? A. No, sir; I should have waited until he came. Q. If Mr. Liggan hadn't told you that, what would you have done? A. I should have waited until he came. Q. Why didn't you wait when you got your hand injured? A. I thought I could unchoke it: I saw how he unchoked it. * * * Q. You stated a moment ago that the first time the machine became choked that if Mr. Liggan hadn't suggested your going after Mr. Money that you would have waited for Mr. Money to have come back? A. Yes, sir. Q. Now then, when it became choked the second time, why didn't you wait for Mr. Money to come? A. I saw him unchoke it and I thought I could unchoke it. Q. Why did you think you could unchoke it? A. I saw how he unchoked it. * * * Q. Had the machine stopped when he unchoked it? A. I don't know whether it had or not. Q. Weren't you standing right there? A. I was standing there, and I thought it had stopped when I went to unchoke it. Q. I didn't ask you anything about that; I asked you hadn't the machine stopped when Money unchoked it? A. I couldn't tell you. Q. Couldn't you tell? A. I never paid any attention to whether the belts were running; they run all the time. Q. Then you never paid enough attention to the machine when Mr. Money was even unchoking it in your presence to ascertain whether it was going or not? A. The belts were going. Q. Didn't you state a moment ago that you didn't know whether the machine was running or not when Money unchoked it? A. No, sir, I didn't know whether it was running or not. Q. Then you don't know whether it was running on either of the occasions, did you, the first

or second? A. No, sir.   Q. Then, notwithstanding the fact that you didn't know whether the machine was running the first or second time; when Money put his hand in there for the purpose of unchoking it, you deliberately stuck your hand in one of those glass doors? A. Yes, sir.   Q. And, if I understand your statement a moment ago, you put it in the opposite direction from the one that Mr. Money had put his hand? A. I suppose I did."

It was shown upon the trial of the case that in each of the five circular coverings, which were a part of the picker, there was a screen and a revolving cylinder, and that in case the machine became choked in any one of its compartments the proper way to unchoke it was to lift the lid and run the hand in back toward the screen, which would be in an opposite direction from the cylinder. Plaintiff, in his examination as a witness for himself, testified as follows:

"Q. When this man came there to put his hand in there to unchoke it, explain to the jury which way he·put his hand—take that to be the cylinder which injured you and this is the screen—when he put his hand back in there to get the cotton out, which way did he put it? A. He put it back toward the screen.   Q. Which way did you put your hand when you put it in there? A. I put it toward the cylinders.   Q. And you got it caught in the teeth of the cylinder? A. Yes, sir."

As showing whether or not the plaintiff acted prudently at the time of the accident, we deem it proper to give further extracts from his testimony as a witness, as follows:

"Q. Didn't you know there was something inside of those large·casings or coverings that was revolving? A. I thought maybe it was a screen or something.   Q. Then you did think there was something in there, didn't you? A. Sure.   Q. You knew there was something in there, didn't you? A. Yes, sir.   Q. Did you know what it was? A. No, sir.   Q. Did you try to find out? A. No, sir.   Q. Did you ask anybody? No, sir.   Q. If you didn't know there were screens on the inside of those casings or coverings, or something in there that revolved, why did you suppose you were putting the cotton in the machine? A. I knew there was something in there that revolved; the screens revolved.   Q. You didn't think it was going to hurt you if you put your hand inside, did you? A. I thought it had stopped.   Q. I didn't ask you that; I asked you if you thought it was going to hurt you if you put your hand on the inside of it? A. I didn't know whether it would or not.   Q. Then, without any knowledge on your part, one way or the other, or without knowing what was inside of those machines, you stuck your hand underneath there, didn't you? A. Yes, sir."

At the time of the injury the plaintiff was about 24 years of age. When plaintiff announced the close of his testimony the counsel for defendant moved the court to instruct the jury to return a verdict for the defendant. This motion was overruled and the`defendant excepted. The motion was renewed at the conclusion of all the testimony, was overruled by the court, and the defendant again excepted, and it is upon this exception and the assignment of error thereon that the case is before us. There was no evidence introduced by the plaintiff, nor was there any disclosed during the trial, tending to support the allegation that the machine at which the plaintiff was working was defective or not in good running order, so this element of alleged negligence is eliminated. Therefore, the sole position on which plaintiff bases his right of recovery is the failure of the defendant to instruct him how to operate the machine at which he was put to work. If plaintiff has failed on this ground to sustain the allegation of negligence on the

part of the defendant, the case is at an end. In order to present our views, let it be conceded that the defendant, without giving proper instructions, put the plaintiff to work with a machine which was dangerous, and with which the plaintiff was unfamiliar. The question arises if this failure on the part of the defendant was the proximate cause of the injury. It is an established principle that in order to render negligence actionable it must be the proximate cause of the alleged injury for which damages are claimed, and although the defendant in an action may have been guilty of a breach of duty which, in law, amounted to negligence, yet if the plaintiff, by doing that which a reasonable and prudent person would ordinarily have done under the circumstances, could have prevented the injury, and he failed to do that, he cannot recover, because the law says his negligence is the proximate cause of the injury. The doctrine has become so well settled, both by elementary writers and judicial decision, that it is regarded as a maxim "that the law looks at the proximate, and not at the remote, cause of an injury, and to constitute actionable negligence there must be not only a causal connection between the negligence complained of and the injury suffered, but the connection must be a natural and unbroken sequence without intervening causes, so that but for the negligence of the defendant the injury would not have occurred. It is not sufficient that the negligence of the defendant be the remote cause or mere condition of an injury of which some intervening act or negligence is the efficient and proximate cause."

Moore, in his recent work on Carriers, c. 12, § 2, p. 377, gives a very intelligent definition of "proximate cause," as follows:

"The breach of duty on which an action for injury can be maintained must be the proximate cause of the injury sustained; and the proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new and independent cause, produces that event, and without which that event would not have occurred."

Taking it for granted, therefore, that defendant was negligent in the outset, was there some intervening act of the plaintiff himself which was the immediate cause of the result, and but for which it would not have occurred? If there was such intervening act of the plaintiff, was it such an act as a reasonable and prudent person would ordinarily have done under the circumstances of the situation? What was the situation? There was a large piece of machinery 40 feet in length, composed of 5 compartments. There were axles extending outside of the machine, on which there were pulleys, and these were in plain view. On these pulleys were belts extending to other pulleys on a line of shafting overhead by which they were operated. By the most casual use of the senses of seeing and hearing it would be discovered that there was running machinery of some kind within each of the five compartments of the machine. Plaintiff says himself that he knew there was something in there that revolved, and he admits that he did not know what it was and that he did not try to find out. He says further that, without knowing what was inside of the machine, he put his hand in, when it was torn off by the revolving cylinder.

Justice Swayne, in delivering the opinion of the Supreme Court of the United States, in the case of Baltimore, etc., Railroad Company v. Jones, 95 U. S. 439, 24 L. Ed. 506, gives a concise and comprehensive definition of negligence, as follows:

"Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. The essence of the fault may lie in omission or commission."

Measuring plaintiff's action at the time by this rule, we feel constrained to hold that it was inconsistent with reason and prudence. In other words, that it was negligence, and that it was this negligence which was the direct, immediate, and proximate cause of his injury. In attempting, under the circumstances, to do this act in connection with a machine, the complex, intricate, and dangerous character of which was obvious, the plaintiff assumed the risk, and is himself responsible for the result. The cases generally in which a failure on the part of the master to instruct the servant as to the use of machinery has been held to be negligence are those relating to the employment of infants and minors, and the doctrine laid down is that children of tender years and immature minds are not capable of exercising such degree of judgment, discretion, and care as to render it safe to employ them about machinery, and especially that of a dangerous character, without giving them thorough instructions and directions, but even in these cases it has been held that when an infant becomes capable of any degree of care he is required to use it, and it constitutes negligence on his part, and he becomes responsible, for injuries resulting from his failure to exercise such care as he is capable of. A. & E. Enc. Law, vol. 16, p. 409, and authorities cited under note 3.

We have so far discussed the case on the assumption that plaintiff was required to operate the machine and to do all that was necessary to keep it going, and that defendant, with a knowledge of his inexperience, had failed to properly instruct him. Aside from the testimony, the plaintiff's action discredits this assumption. He was put to work placing the motes on the apron, and told that what he was to do could be done by a blind man or a child. This expression, accredited to Money, that the work could be done by a blind man or a child, was relied upon largely by plaintiff's counsel in the argument to sustain the position that defendant had not only failed to give plaintiff proper instruction, but had "lulled him to sleep" as to the dangers incident to the operation of the machine. In our opinion this declaration of Money, instead of supporting that theory, emphasizes the fact that plaintiff was not expected to tamper with complex, intricate, and dangerous machinery, but only to do the work which Money showed him how to perform. It sufficiently appears that plaintiff so understood it, for when the machine choked the first time he made no effort to relieve it, but at the instance of Liggan went for Money, and he frankly states that if Liggan had not told him to go for Money he would have waited for the last named to come and unchoke the machine. He certainly did not, at that time, regard it as a part of

his duty to unchoke it himself. He further emphasizes the fact that he did not understand it to be a part of his business to handle. the machinery, for when the picker became choked the second time he again sought Money to come and relieve it, and it was only after a few minutes search that he failed to find Money that he returned and undertook, without examination or precaution, to unchoke the machine, because, as he says, he thought he knew how. In other words, without taking the precaution to ascertain whether or not it was in motion, he thrust his hand into the recesses of the machine, with the workings of which he admits he was ignorant, not knowing, as he states, whether he would get hurt or not. Such conduct, in our opinion, was not only negligence, but recklessness. The law does not favor one who fails to use reasonable care and caution to protect himself from injury, nor does it give damages to one who, by his own careless, heedless act has become the architect of his own misfortune.

A case peculiarly in point is that of Robinska v. Mills, 174 Mass. 432, 54 N. E. 873, 75 Am. St. Rep. 364, 6 Am. Neg. Rep. 571, cited in defendant's brief. The facts in that case were as follows:

"A woman, who did not speak English, and had no other knowledge of machinery than what she had gotten in a few days during which she was learning to work in a mill, was told to clean with a brush a machine for cleaning cotton, some way in from the back of which was a cylinder covered with needles, revolving away from her, the greater part being concealed by a cover, so that only the top could be seen, which she did not see, and she did not know that the cylinder had needles on it or was in motion, although it made a good deal of noise, and there was cotton lint in this place which would not come off when brushed. She put her fingers in to remove the cotton and was injured."

Chief Justice Holmes, in delivering the opinion in this case, said:

"If she saw fit to put her hand into the recesses of a going machine without knowing what she would meet, she cannot hold other people answerable for the consequences. The defendant was not bound to anticipate and warn against such conduct."

We think, therefore, that upon the undisputed facts in this case the injury to the plaintiff was due to his own negligence, and that the question was one of law for the court, and not an issue for the jury. The principle which has been long settled was reiterated by this court in Travelers' Insurance Company v. Selden, 78 Fed. 285, 24 C. C. A. 92. In that case Judge Brawley, in delivering the opinion of the court, says:

"It is unnecessary to cite the numerous and familiar cases which declare it to be the duty of the court to direct a verdict when the evidence is undisputed or is of such a conclusive character that the court would, in the exercise of a sound judicial discretion, be compelled to set aside a verdict rendered in opposition to it."

And, further:

"It is error to leave a question of law to the arbitrary determination of a jury, for everybody knows that a case of this kind can have but one result, if left to a jury, moved, as it must be, by the natural and creditable instincts of human nature to sympathize with the afflicted."

We, therefore, conclude that there was error in the refusal of the court to direct a verdict as requested by the defendant.

Let the judgment of the Circuit Court be reversed.

Reversed.

WADDILL, District Judge (dissenting). I am unable to concur with the majority of the court in this case, either in the conclusion reached, or in the determination of any of the material questions passed upon. The suit is to recover damages for personal injuries received by the plaintiff while in the employ of the defendant. The plaintiff, a totally ignorant and unskilled employé, was, in effect, against his protest and without any instruction whatever, put in charge of machinery of the most complicated kind, operated by electricity, in handling which he was injured, not from any cause open and obvious even to a skilled person, but by one of a hidden and unseen character. The majority of the court holds him responsible for negligently handling and operating this machinery; moreover, denies his right to recover because his alleged negligence was the proximate cause of the injury sustained. The case turned almost entirely upon a question of fact, as to the vital points of which the lower court properly said the conflict was absolute, and the same was rightfully submitted to the jury, under instructions given by the court, fairly and correctly propounding the law, of which the defendant had no cause of complaint, and in which the majority of the court finds no error, and a verdict having been rendered in favor of the plaintiff, the same ought manifestly not to be set aside, and to do so, the court plainly usurps the function of the jury. The suggestion that the plaintiff's negligence in operating the machinery was the proximate cause of the accident, of course, has no application here, where the gravamen of the complaint is that the defendant first erred in the selection of an improper employé, which is admitted. To relieve of responsibility, because the act of the incompetent servant is the proximate cause of the injury, would serve to relieve the master from all obligation, either to employ competent servants or to instruct ignorant ones before placing them in hazardous positions. Nor is there anything in the suggestion made in opposition to the finding of the jury favorable to the plaintiff to the contrary, upon the precise question that the plaintiff was employed to feed the cotton picker, and not to run or unchoke the same. It could not have been run when choked. It was impracticable to feed or run it when choked, and, upon its becoming so, to hold this plaintiff responsible for trying to unchoke the machine, after he had, as he thought, done all that was necessary to stop all the machinery, by throwing it out of gear, which it is conceded he properly did, is to hold him—an incompetent and unskilled employé, recklessly and inexcusably, if not criminally, intrusted with the operation of dangerous machinery—responsible for failure to possess the highest degree of skill in that regard. Having served his employer by promptly and efficiently throwing the same out of gear when it became choked, to prevent disaster, he set to work, finding no one at hand to aid him, to do what he had a short time before seen a competent representative of the company do, when the machinery had

previously similarly clogged—that is, unchoke the same, which even to an ignorant and unskilled employé was apparently an easy and simple thing to do; but it developed that there was a latent and hidden danger arising from the fact that the cylinders of the machinery connected with the various pickers continued to run for some time after throwing off the gear or belting operating the same, and from this hidden source of danger the plaintiff lost his hand. To say that he should have placed his hand in one position or in another to unchoke the gin is to beg the entire question. He, of course, did not know how to put his hand, or he would not have received the injury, nor would he have put it where he did had he supposed there was danger, or been informed of the hidden cylinder; and he should not have been placed and left in this position of responsibility and peril without being informed of such danger.

The majority opinion correctly states and discusses the law in most respects, applicable to the handling of machinery by competent persons where the dangers are open and obvious; but it is submitted that what is there said has no application to a case like this, arising from the failure to instruct a confessedly ignorant and unskilled employé, who sustains an injury in the handling of complicated machinery from a latent, and not a patent, danger. In any view that can be taken of this case, from my standpoint, alike under the law and the facts, the plaintiff is plainly entitled to recover, the verdict of the jury ought not to be disturbed, and the decision of the lower court should be affirmed.

NOTE.—The following is the opinion of McDowell, District Judge, filed in the court below:

McDOWELL, District Judge. The instructions given for the plaintiff are, of course, based on the hypothesis that the testimony for the plaintiff gives the true version of the facts; while those given for the defendant are, equally of course, based on the opposite hypothesis. The objection that was urged to the instructions for the plaintiff was, as I recall, based on the belief that these instructions imposed a higher duty on the defendant than the law requires. To this contention I thought it a sufficient response that, if the evidence of Cox and Hall be treated as true, the plaintiff—a green hand—was subjected without proper instruction or warning to a risk from a danger which either was not to this particular plaintiff open and obvious, or which, at least, the jury might properly hold not to have been obvious to this plaintiff. In the instructions given for the plaintiff the question as to the alleged obviousness of the danger was left to the jury. The objection to the defendant's instruction No. 6, which I think of greatest force, is that it is practically equivalent to instructing a verdict for the defendant. It is in effect that if the plaintiff did not either wait for the machine to come to a standstill or go and get Mr. Money they must find for the defendant. The plaintiff admittedly did not do either. Hence this is equivalent to instructing a verdict. For the court to instruct that the plaintiff should have waited for the machine to come to a standstill is to ignore his entire ignorance of the concealed and armed cylinder inside the machine, and to draw the inference, from the fact that the exterior belt, pulley, and shaft were still revolving, that he must therefore, as a matter of law, have known, not only that some interior part of the machine was still revolving, but also that in such fact laid an obvious danger—seemingly in some sense an inference from an inference. For the court to instruct that the plaintiff should have gone after Money is to ignore the testimony to the effect that the plaintiff was not told to wait for or to go after Money if the machine became choked; that the plaintiff was told to "run" the machine, and that there was no danger, as a blind man could

run it. The reason for refusing this instruction, and for refusing to direct a verdict for defendant, is found in the testimony of Cox and Hall. If their version was the truth of the matter, the defendant had put a green hand to operate (and not merely to feed) a piece of machinery which, if it had to be unchoked, was dangerous from a cause that was not necessarily open and obvious to the plaintiff—however obvious it might have been to one acquainted with the machine or with machinery in general. The plaintiff had seen Money unchoke the machine, and the operation appeared to be simple and not accompanied by danger. If he was told to run the machine, and had been advised that it was important to rush the work, it was a natural action on his part to attempt to do the apparently simple and safe thing he had seen Money do, and he had to accomplish, or have accomplished, the unchoking of the machine in order to "run" it and rush the work. Under the instructions that were given, I left it to the jury to say whether or not the plaintiff had exercised a reasonable degree of care and foresight—having laid down the rules of law applicable to the state of facts on both the theory that the plaintiff's story was the truth and also on the opposite theory. I feel sure that no court can instruct a verdict, if in so doing all of the vitally important portions of the evidence of two competent witnesses is thereby utterly ignored. Defendant's instruction No. 7 seemed to me erroneous in that in this instruction the court was either made to say as a matter of law that the revolution of the exterior appliances should have apprised plaintiff of the danger involved in attempting to then unchoke the machine, or at least it is so worded as to probably mislead or confuse the jury concerning this very vital point in the case. It will be observed that this instruction contains but one sentence of unusual length. It is involved and confusing even to those supposed to be expert in construing such writings. I think an average jury might easily be utterly confounded by such an instruction, even if not led to suppose that the court was instructing them that the movement of the exterior pulley, belt, and shaft was sufficient to make the concealed, and to the plaintiff then unknown, danger, an open and obvious one to him. Whether or not the plaintiff was guilty of contributory negligence, and whether or not the danger was obvious to him, seemed to me to be peculiarly for the jury. The answer to such questions depended on the capacity and mental alertness of the plaintiff; on his knowledge of machinery in general; on his knowledge of this particular machine; and in very great degree on the ascertainment of the true facts, concerning which there was sharply conflicting testimony. The plaintiff, if he and Hall testified truthfully, had been thrown off his guard, and given to understand that there was nothing dangerous to be apprehended in "running" the machine, and he had some reason to suppose, from observing Money's actions in unchoking the machine, that the operation was simplicity itself. If, however, it was true that he had been told to do nothing but feed the machine, and to go and get Money if the machine became choked, he had to some extent been warned of danger, and perhaps he should have inferred from the exterior movement a continued movement and consequent danger within the machine. It seems to me at least that there was here a question for the jury. Moreover, if there be lurking in this instruction a sound rule of law applicable to this case, such rule had been concisely and clearly set out by the learned counsel for the defendant in their instruction No. 4; and said instruction was given. If in this case the court had had to perform the duty of the jury, possibly a different verdict would have been rendered. But, if so, it would have been because the court would have given more credence to the defendant's witnesses and less to the plaintiff's than the jury saw fit to give. The conflict in testimony was absolute on the few vital points in the case. Under such circumstances as existed here, I hold the opinion that the court has no power either to instruct a verdict or to set aside a verdict rendered by the jury which is allowable under the instructions and supported by very much more than a "scintilla of evidence."